Filed 11/1/23  P. v. McCombs CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B325006 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA036496) |
| v. | |
| KYLE LAMBERT MCCOMBS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Emily Cole, Judge.  Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

In 2007, a jury found Kyle McCombs guilty of voluntary manslaughter with a true finding that a principal used a gun. In 2022, McCombs petitioned for resentencing under Penal Code[1] section 1172.6,[2] which limits accomplice liability for murder. The trial court denied the petition. McCombs appeals and contends that he was convicted based on a theory under which implied malice was improperly imputed to him. We disagree and affirm the order.

## BACKGROUND

Eddie Wheston was shot and killed on January 28, 2005.[3] That day, Wheston was at his apartment with two men, identified as McCombs and Dwayne Harris. Wheston's girlfriend saw Wheston struggling with a man who held a gun, which she did not recognize as belonging to Wheston, who also owned a gun. The man shot Wheston, who died, having suffered seven gunshot wounds. A witness saw McCombs and Harris flee the scene, both holding guns. McCombs was treated at a hospital for a gunshot wound.

McCombs and Harris were jointly charged with and tried for Wheston's murder. In 2007, a jury found them not guilty of first degree murder and deadlocked on lesser offenses. On retrial, another jury found McCombs and Harris not guilty of second degree murder but guilty of voluntary manslaughter. The

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] We derive the facts regarding the crime from the opinion affirming McCombs's judgment of conviction, *People v. McCombs* (Jan. 27, 2009, B199705) [nonpub. opn.].

jury also found true the allegation that a principal was armed with a gun (§ 12022, subd. (a)(1)).

In 2022, McCombs petitioned for resentencing under section 1172.6. The trial court appointed counsel for him, and the People submitted opposition, which included the instructions given to McCombs's jury.

The trial court denied the petition, finding that McCombs's jury was not instructed on felony murder or the natural and probable consequences doctrine. For reasons not relevant here, the trial court also resentenced McCombs to 23 years in prison.

## DISCUSSION

I.      Overview of Senate Bill No. 1437

To the end of ensuring a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Senate Bill No. 1437 added section 189, subdivision (e) (limiting application of the felony-murder rule) and section 188, subdivision (a)(3) (stating that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime"). As amended by Senate Bill No. 775, effective January 1,

3

2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

Senate Bill No. 1437 also created a procedure, codified at section 1172.6, for a person convicted of murder, attempted murder, or voluntary manslaughter under the former law to be resentenced if the person could no longer be convicted of those crimes under the current law. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration that, among other things, the defendant could not presently be convicted of murder, attempted murder, or voluntary manslaughter under the current law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing. (*Id.* at pp. 708–709; § 1172.6, subds. (b)(3), (c), & (d)(1).)

## II. Voluntary manslaughter and implied malice

McCombs contends he established a prima facie case for relief because his jury was instructed on aiding and abetting and voluntary manslaughter in a manner that allowed the jury to impute malice to him based solely on his participation in the crime. To support this contention, he relies on *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). After discussing those cases, we explain why we do not agree with their interpretation of the pertinent instructions.

### A. Powell *and* Langi

*Powell* and *Langi* examined the interplay between instructions on aiding and abetting and second degree murder.

4

Beginning with *Powell*, the jury in that case was instructed on aiding and abetting with CALCRIM No. 401: " 'To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove the following: [¶] 1. The perpetrator committed *the crime*. [¶] 2. The defendant knew that the perpetrator intended to commit *the crime*. [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing *the crime*; and [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a *crime* if he knows of the perpetrator's unlawful purpose, and he specifically intends to and does in fact aid, facilitate, promote, encourage, or instigate the perpetrator's commission of *that crime*.' " (*Powell*, *supra*, 63 Cal.App.5th at pp. 706–707.)

The *Powell* jury was further instructed on malice murder with CALCRIM No. 520, that there are two kinds of malice aforethought, express and implied, either of which can establish the state of mind required for murder. (*Powell*, *supra*, 63 Cal.App.5th at pp. 707–708.) The instruction further provided that the " 'defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed *an act*; 2. The natural and probable consequences of *the act* were dangerous to human life; 3. At the time *he acted*, he knew *his act* was dangerous to human life and 4. He deliberately acted with conscious disregard for human life.' " (*Ibid.*)

*Powell* found that CALCRIM No. 401 was "not tailored for" aiding and abetting an implied malice murder. Specifically, CALCRIM No. 401 referred to an intent to aid and abet a *crime*. However, the aider and abettor in fact needed to "intend the

commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Powell*, *supra*, 63 Cal.App.5th at p. 714.) Stated otherwise, CALCRIM No. 401 did not require the aider and abettor to have known that the act aided and abetted was life-threatening or require the aider and abettor to have personally acted with conscious disregard to human life.

*Langi*, *supra*, 73 Cal.App.5th 972, applied *Powell*'s reasoning in the section 1172.6 context. In that case, Langi and three other men beat the victim, who died from head trauma after falling and hitting his head during the assault. Langi's jury was instructed on aiding and abetting with CALJIC No. 3.01 and on second degree murder with CALJIC No. 8.31.

CALJIC No. 3.01, as given to Langi's jury, stated that a person aids and abets the commission of a crime when the person (1) with knowledge of the perpetrator's "unlawful purpose," and (2) with the "intent or purpose" of committing or encouraging or facilitating the crime's commission, (3) by act or advice aids, promotes, encourages or instigates the crime's commission. (*Langi*, *supra*, 73 Cal.App.5th at p. 981.)

CALJIC No. 8.31, as given to Langi's jury, stated that a killing is a second degree murder if (1) the killing resulted from an intentional act, (2) the act's natural consequences are dangerous to human life, and (3) the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. When the killing is the direct result of such an act, it is unnecessary to prove that the defendant intended that the act would result in the person's death. (*Langi*, *supra*, 73 Cal.App.5th at p. 981.)

6

The jury found Langi guilty of second degree murder, and the trial court summarily denied his subsequent section 1172.6 petition. On appeal, however, the appellate court found that the defendant was entitled to an evidentiary hearing because the instructions permitted him to be found guilty of aiding and abetting second degree murder by improperly imputing malice to him and without finding he personally acted with malice. The court explained that although the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent or purpose to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Langi*, *supra*, 73 Cal.App.5th at p. 982.) That is, "while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Id.* at pp. 982–983.) Under the instructions given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, Langi need only have intended to encourage the perpetrator's intentional act— punching the victim—whether or not Langi intended to aid or encourage the victim's killing, and whether or not Langi personally knew of and disregarded the risk of such a killing.

7

(*Id.* at p. 983.) In short, the instructions permitted the jury to find that the aider and abettor intended to help the perpetrator commit an act—an assault, for example—without the mental state of conscious disregard for human life. *Langi* concluded that the instructions should have been tailored to state that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice. (*Ibid.*)

B. *The instructions did not allow the jury to impute malice to McCombs*

McCombs's jury was instructed on aiding and abetting, second degree murder, and voluntary manslaughter. Like *Langi*'s jury, McCombs's jury was instructed on aiding and abetting via CALJIC No. 3.01 and on second degree murder via CALJIC No. 8.31, although the jury rejected second degree murder.[4] The jury was also instructed on voluntary manslaughter with CALJIC No. 8.40, which contains the same language about implied malice as in CALJIC No. 8.31:

> Every person who unlawfully kills another human being without malice aforethought but either with an intent to kill, or with conscious disregard for human

---

[4] McCombs's jury was also instructed with CALJIC No. 3.00: "Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: 1. Those who directly and actively commit the act constituting the crime, or 2. Those who aid and abet the commission of the crime."

8

life, is guilty of voluntary manslaughter in violation of Penal Code section 192, subdivision (a).

There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion or in the actual but unreasonable belief in the necessity to defend oneself or another person against imminent peril to life or great bodily injury.

The phrase, "conscious disregard for life," as used in this instruction, means that a killing results from the doing of an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life.

In order to prove this crime, each of the following elements must be proved:  [¶]  1. A human being was killed; [¶]  2. The killing was unlawful; and [¶]  3. The perpetrator of the killing either intended to kill the alleged victim, or acted in conscious disregard for life; and [¶]  4. The perpetrator's conduct resulted in the unlawful killing.  [¶]  A killing is unlawful, if it was neither justifiable nor excusable.  (Brackets omitted.)

CALJIC No. 8.40 thus tracks the second degree murder instruction (CALJIC No. 8.31) insofar as it requires the perpetrator to either to intend to kill or to act in conscious disregard for human life.  Accordingly, relying on *Langi*, McCombs contends that the instructions allowed the jury to convict him of voluntary manslaughter by imputing malice to him.  We do not agree.

*Langi* interpreted CALJIC No. 3.01's reference to "unlawful purpose" to mean that the actual perpetrator's unlawful purpose may have been only to strike, injure or embarrass the victim—

9

unlawful purposes that presumably implicate something less than an intent to kill or a conscious disregard for human life. To be sure, in isolation "unlawful purpose" could mean something other than intent, such as motive, which is what we understand *Langi* to be saying. But such an interpretation divorces "unlawful purpose" from its context. We do not, however, read phrases in instructions in isolation. (*People v. Burton* (2018) 29 Cal.App.5th 917, 925 [we interpret instructions as a whole].)

Rather, CALJIC No. 3.01 uses the word "purpose" in two places. The instruction states that a person aids and abets a crime's commission when the person with knowledge of the (1) perpetrator's "unlawful *purpose*" and (2) "[w]ith the intent or *purpose* of committing or encouraging or facilitating" the crime's commission, by act or advice aids, promotes, encourages or instigates the crime's commission. (CALJIC No. 3.01, italics added.) When CALJIC No. 3.01 uses "purpose" the second time, it is as a synonym for "intent," as the instruction refers to the aider and abettor's "intent or purpose." There is no reason why "purpose" would have a different meaning the first time it is used in that instruction when it refers to the perpetrator's "unlawful purpose." Rather, a rule of construction is that where a statute (or, as here, a jury instruction) uses synonymous words or phrases interchangeably, they should be understood to have the same meaning. (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 866.) Therefore, "unlawful purpose" refers to the actual perpetrator's unlawful intent, which for voluntary manslaughter is either an intent to kill or committing an act knowing it is dangerous to human life and with conscious disregard thereof.

We do not read the instruction otherwise, as suggesting McCombs could be liable for aiding and abetting voluntary manslaughter despite knowing that Harris intended some other, lesser "unlawful purpose." There is no reason why a jury, as *Langi* suggests, would think that "unlawful purpose" means anything other than acting with an intent to kill or committing an act with conscious disregard for human life. Indeed, our California Supreme Court has rejected a similar interpretation of the aiding and abetting instruction as that urged by *Langi*. In *People v. Hardy* (2018) 5 Cal.5th 56, 96, the defendant argued that his jury was not properly instructed that torture and aiding and abetting require specific intent. After quoting the standard instruction on aiding and abetting, CALJIC No. 3.01, the court said that the language "intent or purpose" in it was not something different from or less than specific intent. (*Hardy*, at p. 96; see also *People v. Beeman* (1984) 35 Cal.3d 547, 561.) "If anything, 'purpose' is a higher standard than 'intent.' " (*Hardy*, at p. 96.)

Also, CALCRIM No. 3.01 required the aider and abettor to know that the perpetrator intended to commit *the crime*. The only crime charged here was murder, either second degree or voluntary manslaughter. In this way, *Langi* is distinguishable because the defendant in that case was also charged with and found guilty of the crimes of robbery and battery. (*Langi*, *supra*, 73 Cal.App.5th at p. 976.) But here, the only crime charged, murder, required one of two different intents: either intent to kill or implied malice (conscious disregard). It is unclear how an aider and abettor could know that the perpetrator intended to commit a specific crime and help the perpetrator commit that crime—which, it bears repeating, was here defined in CALJIC

11

No. 8.40 as requiring intent to kill *or* a conscious disregard for human life—and yet not personally harbor the requisite mens rea. As our California Supreme Court said in *People v. McCoy* (2001) 25 Cal.4th 1111, 1123, where the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice."

But even if we assumed that the instructions were not properly tailored to aiding and abetting a voluntary manslaughter, we fail to see, beyond a reasonable doubt, how it mattered. When a trial court instructs on alternative theories of guilt and at least one of those theories is legally erroneous when given, we normally assess whether the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 851; *People v. Aledamat* (2019) 8 Cal.5th 1, 3.)

Under the unique circumstances of this case, the People did not distinguish between McCombs and Harris in terms of their acts and mens reas. The way in which this case was charged, tried, and resolved reflected this. The information alleged only principal gun use enhancements, so the People never charged either of them as the actual killer or with personal use of a gun. The jury accordingly found McCombs and Harris guilty of only principal gun use enhancements. And the People's theory of the case, expressed in closing argument, was that defendants and the victim were involved in a narcotics transaction that went bad. More important, the prosecutor said the evidence had not necessarily shown exactly what happened in Wheston's apartment and who the shooter was. Indeed, it was possible that McCombs and Harris both fired shots. But it did not matter

12

because both were equally guilty as principals.  That is, both were direct perpetrators with the same mental state.  For all intents and purposes, McCombs and Harris were indistinguishable participants in the crime in terms of their acts and intents.  Beyond a reasonable doubt, the jury would not have imputed Harris's implied malice to McCombs.

## DISPOSITION

The order denying Kyle McCombs's Penal Code section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


I concur:


ADAMS, J.


13

LAVIN, J., Concurring:

The majority reaches the correct result and the order denying the petition for resentencing should be affirmed. We need not decide, however, whether *People v. Langi* (2022) 73 Cal.App.5th 972 was correctly decided. *Langi* is distinguishable because the defendant in that case was also charged with and found guilty of the crimes of robbery and battery. (*Id*. at p. 976.) The only crime charged in this case, murder (either second degree or voluntary manslaughter), required one of two different intents: either intent to kill or implied malice (conscious disregard). And as noted by the majority, since the only unlawful purpose charged here was an unlawful killing, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123.)

LAVIN, J.